## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JOHNNY MILLIGAN,**

     **Plaintiff,**

**v.**                                 **CASE NO.:**

**NANCY A. BERRYHILL AS ACTING**
**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION,**

     **Defendant.**
_____/

### COMPLAINT

Plaintiff, JOHNNY MILLIGAN, hereby sues Defendant, NANCY A. BERRYHILL AS ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, and alleges:

### NATURE OF THE ACTION

1.    This is an action brought under 42 U.S.C. §1981a and 42 U.S.C § 2000e <u>et seq.</u>

2.    This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, JOHNNY MILLIGAN, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his race (black), gender (male), and was retaliated against after his reporting.

4.      At all times pertinent hereto, Defendant, NANCY A. BERRYHILL AS ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, an African-American male, began his employment with Defendant on October 13, 2015 and held the position of Legal Assistant/Senior Case Technician ("SCT") Clerk at the time of his wrongful termination on April 23, 2018.

2

7.     Despite his stellar work performance during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his gender and race. Moreover, Plaintiff reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8.     The disparate treatment and retaliation came at the hands of specifically, but not limited to Group Supervisor Frances Smith, a white female, Hearing Office Director Christina Warren, a white female, and Chief Judge  Steven Carnes, a white male.

9.     In or around Fall of 2015, Director Christina Warren and Chief Judge Steven Carnes attempted to demote Plaintiff from his position of Legal Assistant/ SCT Clerk to the position of front desk clerk under the contrived allegation of poor performance. However, Plaintiff always upheld his position and exceeded the standards and expectations of his employer. On several occasions, Plaintiff's stellar work performance was recognized and rewarded. Despite all of this, Defendant continued to contend that Plaintiff's performance was poor.  But the Defendant refused to train Plaintiff in some of his job duties like court reporting.

10.     Plaintiff was the only African American male employed with Defendant in the capacity of Senior Legal Assistant/SCT clerk at this time and the

only employee who Warren and Carnes attempted to demoted on contrived

allegations.

11.     Between January and February of 2016, Plaintiff initiated the first of

three (3) internal EEO grievances against Director Warren and Chief Judge Carnes

for their discriminatory practices by way of attempting to demote Plaintiff without

reasonable cause.  In the grievances, Plaintiff claimed that he was the victim of

discrimination on the basis, in part, of his race and gender.  However, Defendant

forced Plaintiff to continue to perform the demoted front desk clerk duties until his

grievance was investigated in July of 2016.

12.     In or around July of 2016, Director Warren received a call from

Defendant's Headquarter' s Regional Office notifying her that the investigation's

decision on Plaintiff's grievance resulted in Plaintiff's favor. As such, Director

Warren was forced to reassign Plaintiff back to his original Law Clerk position.

Thereafter, Plaintiff's exemplary work performance continued, yet he was subject

to retaliation following his reporting.

13.     By way of example, in a "Notice of Personnel Action" dated October

14, 2016, Plaintiff received a promotion from Grade 6 to Grade 7, but he was still

not allowed to be trained in court reporting nor was he permitted to telework like

his coworkers.  Law Clerks who were hired and/or transferred into Law Clerk

positions after Plaintiff were allowed to train as court reporters

14.     In February 2017, Plaintiff again requested to telework from home (his first request was made in August 2016), as multiple similarly situated non-male and/or non-black employees had been approved to do so in the past. However, Group Supervisor Smith and Director Warren denied Plaintiff's telework request under the contrived allegation of poor performance. However, Plaintiff had just received a performance evaluation rated above average from October 2015 through October 2016.

15.     Nevertheless, Defendant continued to use the contrived allegation of poor performance to deny Plaintiff a telework from home option. In comparison, multiple non-black and non-male employees were permitted to telework from home without difficulties from Defendant.

16.     In April 2017, Plaintiff received a 10-year Federal Service Award in recognition of his service and performance and on June 7, 2017, Plaintiff received his mid-year evaluation from Defendant which gave Plaintiff glowing praise. However, the allegations of poor performance continued.

17.     Between June 6, 2017 and August 18, 2017, Plaintiff initiated the second of three (3) internal EEO grievance actions against Director Warren, specifically alleging harassment, discrimination, and retaliation for not allowing him to telework after successful completion of his first year of probation. He

alleged in this grievance, in part, that his race and gender and retaliation motivated the decisions against him.

18.    On August 18, 2017, Plaintiff was issued a "30-Day Performance Assistance Plan". However, once again, this plan contained false information as Plaintiff had no performance issues. Thereafter, Defendant placed Plaintiff on an extended performance plan for four (4) months, yet Defendant refused Plaintiff any guidance on how to meet management's expectations while placed on these performance plans.  This extended plan, dated September 29, 2017, placed Plaintiff on a "120 Day Opportunity to Succeed" plan based on additional false information and allegations.

19.    On October 13, 2017, Plaintiff received a second promotion that was approved by persons other than Warren and Smith.  On November 20, 2017, Director Warren and Supervisor Smith met to discuss Plaintiff's promotion, as they disagreed with the decision for Plaintiff to be promoted.  In comparison, Supervisor Smith and Director Warren had never attempted to reverse a similarly situated non-black and/or non-male employee's promotion.

20.    On November 26, 2017, despite Supervisor Smith and Director Warren's objection to Plaintiff's promotion, Defendant's management upheld Plaintiff's promotion effective December 1, 2017.

21.    In the interim between December 1, 2017 and March 23, 2018, there were repeated attempts to sabotage Plaintiff's employment by Smith and Warren. They were instrumental in denying Plaintiff leave (which resulted in Plaintiff's physician taking him out of work on medical leave), giving Plaintiff unreasonable deadlines to get his work caught up after his leave, being overly critical of Plaintiff for not working his cases up, reassigning cases to other employees in Plaintiff's absence but taking no actions against the other employees who refused to work them up, and blaming Plaintiff for his cases not being worked up when those cases had been reassigned to other employees who refused to work them up.

22.    On March 23, 2018, Supervisor Smith presented Plaintiff with a Proposal to Remove him from his federal service, effectively terminating Plaintiff's employment with Defendant as of April 23, 2018.  However, there was no reasonable cause for Defendant to fire Plaintiff as his performance evaluations and accolades never suggested poor work performance, but rather, quite the opposite.

23.    On April 23, 2018, Director Warren upheld Supervisor Smith's proposal to terminate Plaintiff's employment with Defendant under the contrived allegation of "unacceptable [job] performance in the critical elements of 'Achieves Business Results and Demonstrates Job Knowledge'".

24.     Director Warren and Supervisor Smith continuously lied about Plaintiff's poor job performance and ineligibility to telework from home due to racial and gender discrimination and later retaliated against Plaintiff by providing him with false and/or subpar performance evaluations after Plaintiff reported the discrimination to the Equal Employment Office within Defendant.

25.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

26.     Paragraphs 1-25 are realleged and incorporated herein by reference.

27.     This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §2000e et seq.

28.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

29.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action

at all to prevent the abuses to Plaintiff.   Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

30.     Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

31.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race based nature and in violation of the laws set forth herein.

32.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination on contrived allegations.

33.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §2000.

34.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in

the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable

relief.

## COUNT II
## GENDER DISCRIMINATION

35.    Paragraphs 1 through 25 are re-alleged and incorporated herein by

reference.

36.    This is an action against Defendant for discrimination based upon

gender by association brought under 42 U.S.C. §2000e et seq.

37.    Plaintiff has been the victim of discrimination on the basis of his gender

in that Plaintiff was treated differently than similarly situated employees of

Defendant when he was subjected to hostility and poor treatment on the basis, at

least in part, of his gender.

38.    This is an action for hostile work environment and disparate treatment

based on sex. The actions to which Plaintiff was subjected were frequent, severe,

pervasive and adversely affected the terms and conditions of his employment with

Defendant.

39.    Defendant is liable for the differential treatment and hostility towards

Plaintiff because it controlled the actions and inactions of the persons making

decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

40.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

41.    Defendant's known allowance and ratification of these actions and inactions actions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

42.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

43.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's wrongful termination.

44.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender in violation of the statutes referenced above.

45.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life

and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

**COUNT III**
**RETALIATION**

46.     Paragraphs 1 through 25 are re-alleged and incorporated herein by reference.

47.     Defendant is an employer as that term is used under the applicable statutes referenced above.

48.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him.

49.     The foregoing unlawful actions by Defendant were purposeful.

50.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

51.     Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

52.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent.  Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

(a)      that process issue and this Court take jurisdiction over this cause;

(b)     that this Court grant equitable relief against Defendant under the counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     that this Court enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     that this Court enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     that this Court enter judgment against Defendant and for Plaintiff awarding Plaintiff costs and attorneys' fees, as allowed by law;

(f)     that this Court award Plaintiff interest as allowed by law; and

(g)     that this Court grant such other and further relief as is just and proper

under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which

are so triable.

DATED this 15th day of July 2019.

Respectfully submitted


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF